IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                    No. 1:19-cr-10093-JDB-1

VIRGIL PAUL TAYLOR,

    Defendant.

_____

ORDER DENYING DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S ORDER ON
PRETRIAL RELEASE
_____

*INTRODUCTION*

In an order entered April 1, 2020, United States Magistrate Judge Jon A. York denied the motion of the Defendant, Virgil Paul Taylor, to set bond in this matter. (Docket Entry ("D.E.") 34.) Pending before the Court is Defendant's appeal of the magistrate judge's order, as amended (D.E. 39), to which the Government has responded (D.E. 41).

*BACKGROUND*

In a nine-count indictment entered August 19, 2019, Taylor was charged with possession with intent to distribute methamphetamine in contravention of 21 U.S.C. § 841(a)(1) and firearms offenses in violation of 18 U.S.C. §§ 922(g) and 924(c) and 26 U.S.C. §§ 5822, 5841, 5842, 5861, and 5871. (D.E. 2.) A pretrial services report dated October 30, 2019, indicated that Taylor was forty-three years old and had been diagnosed with high blood pressure in the past. (D.E. 10.) He was taking no prescribed medications and his wife reported he had no existing health issues. His criminal history included drug possession, criminal trespass, battery, theft, and burglary. On

November 4, 2019, he waived a detention hearing and was ordered detained pending trial. (D.E. 13-14.)

On March 23, 2020, Defendant filed a motion for bond due to the potential for exposure to COVID-19[1] in the West Tennessee Detention Facility ("WTDF"), where he is housed. (D.E. 29.) The motion, which was opposed by the Government (D.E. 31), was referred to Judge York (D.E. 30). Following a hearing conducted by video on March 31, 2020 (D.E. 33), the magistrate judge issued a written order denying bond, finding there were no conditions or combination of conditions he could impose that would reasonably assure the safety of the community (D.E. 34).

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq.,* governs the release or detention of a defendant pending trial. Under § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). In reviewing a motion appealing a detention order of the magistrate judge, the district court applies a de novo standard. *See United States v. Palazzola*, Case No. 19-20235, 2020 WL 1984116, at *1 (E.D. Mich. Apr. 27, 2020) (on a motion brought under § 3145(b), the district court's review is de novo); *United States v. Davis*,

---

[1] Some two months earlier, the World Health Organization ("WHO") advised of the detection of a novel coronavirus in Wuhan City, Hubei Province, China. https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200121-sitrep-1-2019-ncov.pdf?sfvrsn=20a99c10_4 (last visited May 11, 2020). On March 11, 2020, the WHO declared the disease, by then labeled COVID-19, a global pandemic. https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57_10 (last visited May 11, 2020). Two days later, President Donald J. Trump issued a proclamation stating that the COVID-19 outbreak constituted a national emergency. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). By the date the motion for bond was filed, 14,509 people had died of the virus worldwide, 402 of those in the United States. https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200323-sitrep-63-covid-19.pdf?sfvrsn=b617302d_4 (last visited May 12, 2020).

No. 2:19-CR-00196-1-JRG-CRW, 2020 WL 1977219, at *2 (E.D. Tenn. Apr. 24, 2020) (same); *United States v. Shelton*, Criminal Action No. 3:19-cr-14, 2020 WL 1815941, at *2 (W.D. Ky. Apr. 9, 2020) (same). "A de novo review requires the district court to give fresh consideration to the issues before it." *Davis*, 2020 WL 1977219, at *2 (quoting *United States v. Raddatz*, 447 U.S. 667, 675 (1980)) (internal quotation marks omitted). In conducting its review, "the court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Lee*, Civil Action No. ELH-19-159, 2020 WL 1974881, at *5 (D. Md. Apr. 24, 2020) (internal quotation marks omitted). The Act is silent on the issue of whether a hearing is required on an appeal of a detention order, but "there is ample authority for the conclusion that the [district court] may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing." *United States v. Hearns*, Case No. 1:20-CR-110, 2020 WL 1493747, at *3 (N.D. Ohio Mar. 27, 2020).

Under the Act, when making a determination as to a defendant's detention pending trial, the judicial officer must decide whether there exists a "condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To do so, he is to consider certain factors: (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, firearm, explosive, or destructive device"; (2) "the weight of the evidence against the person" with respect to dangerousness; (3) the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see also United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

When the "judicial officer finds that there is probable cause to believe" a defendant has committed one of the crimes listed in § 3142(e)(3), there is a rebuttable presumption in favor of detention. *Stone*, 608 F.3d at 945 (quoting 18 U.S.C. § 3142(e)(3)). Such crimes include offenses "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*)" and offenses under 18 U.S.C. § 924(c), which have been charged in the instant indictment.[2]  18 U.S.C. § 3142(e)(3)(A)-(B). Thus, the presumption applies to this case. The presumption imposes upon the defendant a burden of production, under which he must "come[] forward with evidence that he does not pose a danger to the community or a risk of flight." *Stone*, 608 F.3d at 945 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)) (alteration omitted). "Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." *Id.* Even if this burden is satisfied, the presumption remains a factor for the court's consideration because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

Judge York determined that, due to the nature of the charges, Taylor had failed to rebut the presumption and that, even if he had, his lengthy criminal history and the fact that he had been charged with multiple offenses, at least some of which remain pending, after being granted bond in state court weighed in favor of his continued detention. The magistrate judge further found that, although Taylor's high blood pressure might place him at higher risk of complications from COVID-19, no instances of the disease had yet been confirmed at WTDF, which had taken precautions to prevent and mitigate the spread of the virus.

---

[2]The maximum term of imprisonment for the charged § 841(a)(1) offense is twenty years. (D.E. 2-1.) If the Defendant has been previously convicted of a serious drug felony or a serious violent felony, the maximum term is thirty years' imprisonment. (*Id.*)

4

On appeal, Defendant argues that he has rebutted the presumption because his criminal history is not in fact "lengthy," nor is it violent. He further contends that his twenty-eight-year residence in the same house with a woman to whom he has been married for twenty-nine years demonstrates that he is not a risk of flight.

It is true there does not appear to be evidence in the record that Taylor is a flight risk. However, he has not rebutted the presumption that he is a danger to the community. Pretrial detention "can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *Davis*, 2020 WL 1977219, at *2 (quoting *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002)). As noted above, the indictment charges drug and multiple firearms offenses. According to the Government, this case arises from the execution of two state search warrants on Taylor's residence on October 28, 2018, which resulted in the seizure of eleven firearms, a silencer, approximately nine grams of crystal methamphetamine, plastic baggies, digital scales, approximately $1,000 in stolen lumber, and several other stolen items. In a post-arrest interview, he admitted to using around an "8-ball" of the drug daily and selling eight ounces every two days. At least some of the charged conduct occurred at his home, where his wife and child resided.

Defendant has also admitted to abusing marijuana. His reports of self-employment could not be verified by pretrial services. While he attempts to make light of his criminal history, a listing thereof in the pretrial services report spans twenty years and two full pages and shows, if nothing else, a tendency toward recidivism. Even more damning is the fact that some of the enumerated criminal activity occurred while he was under court supervision. Thus, upon a de novo consideration of the relevant factors, the entire record, and a recording of the detention hearing before Judge York, the Court finds there is no condition or set of conditions that could

reasonably assure that Defendant would refrain from engaging in criminal activity pending his trial.

Taylor further argues that his risk for severe complications from the coronavirus changes this dynamic. It does not, at least with respect to this case.

Courts have recognized that "correctional facilities are in general ill-suited to prevent outbreaks and mitigate their spread." *Lee*, 2020 WL 1974881, at *7. Indeed, while there may have been no confirmed cases of the coronavirus at WTDF at the time of the hearing before Judge York, there are now, according to the United States Marshal Service, multiple confirmed cases of the disease at the facility. However, "the mere presence of the virus, even in a detention setting, does not automatically translate to the release of a person accused." *United States v. Ford*, Case No. 2:20-CR-51, 2020 WL 1921209, at *6 (S.D. Ohio Apr. 21, 2020) (quoting *United States v. Andrewsh*, No. 5-19-mj-0087, 2020 WL 1904473, at *6 (M.D. Penn. Apr. 17, 2020); *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020)). "Simply put, the coronavirus is not tantamount to a 'get out of jail free' card." *Lee*, 2020 WL 1974881, at *8.

The pretrial services officer indicated in the report that Defendant stated he had "been diagnosed with high blood pressure in the past" but took no prescribed medication. (D.E. 10 at PageID 22.) His wife denied that he had any existing health problems. Since the report was prepared, Taylor has offered the Court no evidence whatever to support a claim that he currently suffers from high blood pressure or any other condition.

In addition, and as previously noted, Defendant continued to commit crimes while on court supervision. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for

supervision, and others if that individual is taken back into custody." *Ford.*, 2020 WL 1921209, at *7.

Finally, because the coronavirus has now breached the WTDF, it is possible Taylor could have already been exposed. To release him into the community would place his wife, his children, and anyone with whom they come into contact at risk of contracting the disease.

## *CONCLUSION*

While the Court recognizes and is not unsympathetic to the dangers posed by COVID-19 to all inmates at WTDF, whether ill or not, based on the presumption, which has not been rebutted, and the other factors considered by the Court, the Defendant's appeal provides no information from which it may conclude that Taylor no longer poses a danger to the community.

The motion is DENIED.

IT IS SO ORDERED this 12th day of May 2020.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE